Good morning, everyone, and welcome to the Ninth Circuit. Judge Clifton and I are happy to welcome Judge Rakoff, a district judge from the Southern District of New York, who's here to help us out today. It's a pleasure to be here. I come here mostly for the weather. So we have a number of cases submitted on the briefs today. The case of Monhoney v. Angelou v. Peace Health is submitted. The case of Elsie II v. Saul is submitted. The case of Ford v. Saul is submitted. The case of Little Butte property owners v. Bradley and Sheelan County is submitted. And the only case for oral argument today is the Muckleshoot Indian Tribe v. the Tulalip Tribes. You can begin. May it please the Court. Good morning, Your Honors. My name is David West, and with Ann Tweedy today I'm here to represent the Muckleshoot Indian Tribe. I'm going to try and reserve seven minutes of my time for rebuttal. I will watch the clock. All right. The Muckleshoot Tribe is here today to ask the Court to require consistent application of the Court's 1974 Judgment and Permanent Injunction, and particularly paragraph 25A6 of that injunction, to allow the tribe to prove its usual and accustomed fishing areas that were reserved to it under its treaties with the U.S. government. What's required to trigger what was called F, now called A6? What is required to trigger that under the terms of that provision is a prima facie case. The tribe has to come forward with proof that it has a prima facie case, that it has usual and accustomed fishing areas in that particular area. We brought that forward. Wasn't there another condition? I mean, it says, not specifically determined by Final Decision 1. Certainly that is one term of paragraph 25A6. And the meaning of paragraph, of that particular provision, has to be read in context. That is the context of what Judge Bolt intended when he drafted those words and included them in the original injunction. So the language regarding the Puget Sound area, where he specifically determined that Puget Sound, secondarily Puget Sound, was part of the Muckleshoot UNA. And so even though it's broad and ambiguous, he specifically determined that that was part of the Muckleshoot UNA, correct? That's not what Judge Rothstein has... But then we're just starting with the final decision. The final decision, that's what they say. The words of the final decision do say that the Muckleshoot area was Puget Sound. That's correct. So it seems like the question is, what opposing counsel is saying, once we have that, we see that sort of language specifically determined, broad and ambiguous, as Judge Rothstein determined, is that specifically determined then for all time, regardless of what Judge Rothstein, a subsequent district court, might determine under 25A1? Well, the ruling in Muckleshoot 1 and 2 would say that it isn't determined for all time, Your Honor. That was certainly our argument in Muckleshoot 2, that is to say that we said Puget Sound meant Puget Sound. And then that should be the extent of our usual custom area. Even though there's a 25A1 determination, so Judge Rothstein's determination was a 25A1 determination, right? Just clarifying what Judge Bolt's intent was. Let me focus on that, because what Judge Rothstein said is that here, as in Muckleshoot, Judge Bolt has already made a finding of fact determining the location of Muckleshoot's UNA. Although his description may have turned out to be ambiguous, he did make a specific determination. And I focus on the term specific determination because that's the trigger to get to A6 if there wasn't a specific determination. So as I read Judge Rothstein, she's saying, look, that door is closed because he's already decided that. Let me tell you why that door was not closed as to these particular areas, Your Honor, because specifically determined has to be read in conjunction with a location. It's not simply a free-floating, was there any specific area specifically determined? It was the particular area at issue specifically determined. And what Judge Rothstein ruled was that Judge Bolt's words meant that Elliott Bay was specifically determined. That is all that Judge Bolt established in final decision number one. But did she also determine that other parts of Puget Sound, Judge Bolt determined were excluded? Is there any language in the final decision that are words of exclusion? So in other words, this is a tribe's UNA and this area is not? Judge Bolt was very clear in several respects that when he made decisions about usual and accustomed fishing areas, he was not making decisions to exclude, that is to affirmatively decide that a particular area was not a usual and accustomed fishing area. In fact, his fundamental premise in that case was specifically determined meant established. If I established a particular area as I specifically determined it affirmatively, there was nothing in that ruling that prevented another area from becoming coming to the court under 25A6. That was the purpose of 25A6. You're claiming areas both within areas 9, 10, 11 and beyond that, if I understand it. That's right. But as to the latter, why aren't you judicially stopped? As to the areas beyond 9, 10 and 11, the only argument that we made in the lower court that was in 97-1 was that Puget Sound was I thought you also argued that you had no intent of looking at, in using the areas beyond areas 9, 10 and 11, so the court should not consider them as part of the 25A1 consideration. We absolutely made that argument. I was just responding to Judge Ray Koss' invocation of judicial estoppel, Your Honor. So the opinion reads, Muckleshoot argue that the court cannot make a supplemental finding under paragraph 25A6 under Muckleshoot 1 to determine their fishing rights in areas beyond 9, 10 and 11. The district court agrees. So they adopt, the court adopted your proposal, which was that such a finding was precluded. The court misstated our argument, Your Honor. And if you look in the record at the Responding Tribes Supplemental Excerpts of Record number, page 80, that is the portion of the brief that the court cited as support for the proposition that we made that argument. In fact, if you read that particular page, you will see that our argument was Puget Sound is unambiguous, and therefore there is nothing for the court to adjudicate. We did not argue that there had been a specific determination, except in the limited circumstance that Puget Sound was unambiguous. So in that first proceeding, so there was two proceedings before Judge Rothstein. There was the initial one where you were claiming all of Puget Sound, and then there was a second evidentiary hearing on 25A1. Is that right? No, Your Honor. There was only one proceeding. So wasn't there an evidentiary hearing? There wasn't a hearing, per se. There were submissions on the record, and the court did consider the facts in construing what Judge Bolt's intent was when he used the term Puget Sound, secondarily in Puget Sound. So Judge Rothstein did not determine that all of Puget Sound was part of Muckleshoot's UNA, correct? That is absolutely correct. She, in fact, determined the opposite. She determined that only Elliott Bay was part of Muckleshoot's UNA, and she did not give the Muckleshoot an opportunity, and this is because of the limited nature of an A1 proceeding. An A1 proceeding is an enforcement proceeding. That's a very fundamental point. An A1 proceeding is a proceeding to enforce the original judgment against the party who's not acting in conformity with the original judgment. In that type of a proceeding, evidence about other findings that the court would want to make, under A6, for example, is not admissible. We were not allowed to pursue that proof and that claim in that proceeding. Let me take you back to Muckleshoot 1. So in that case, the language, again, was very broad and ambiguous, the environs of Seattle, and we said you can't use 25A6 to vary that language, but we instead said there has to be a 25A1 hearing to determine the limits of what Judge Bolt determined. So the question, to make it parallel to this case, would be after that 25A1 hearing, did we say anything about the other parts of the environs of Seattle, I guess, that Judge Bolt did not intend to include as part of the, I guess, the tribe's UNA? What happened after Muckleshoot 1? Sure. So Muckleshoot 1, that portion of the Muckleshoot 1 decision dealt with the Lummies, usually in the custom fishing areas, and the Lummie have been in the district court and back up to this court on several occasions under other 25A1 proceedings, but none of them have dealt with that particular location. So that particular location has not been pursued by the Lummie or by any other tribe under a 25A6 proceeding. But we don't really know what happens after a 25A1 hearing narrows or clarifies the broad and ambiguous language in the final decision. That's exactly right. That's the question presented here today. What happens, what is a 25A6 proceeding divorced from the context of 25A1? Muckleshoot 1 deals with that latter issue. How can you use 25A6 in a 25A1, says you cannot. This question is, can a tribe that has treaty rights and wants to pursue those treaty rights under A6, as Judge Bolt contemplated and as Judge Bolt expected, and by the way, as 10 other tribes have pursued, including, or in addition, the Stiligwamish tribe is pursuing a claim right now in the district court, and Judge Martinez ruled just last March. Their prior specific determination of usual and accustomed fishing areas did not bar them from proving other areas. And Judge Martinez relied specifically on the language in final decision number one that reads as follows. Although no complete inventory of all of the plaintiff tribes usual and custom fishing areas can be compiled today, the areas identified in the findings of fact, that is the ones established in final decision ones, for each of the plaintiff tribes in general describe some of the freshwater systems and marine areas in which the respective tribes are entitled to exercise their treaty fishing rights today. So Judge Bolt specifically was expecting that other tribes, many tribes, would come to the court after the original decision to establish additional areas. There wasn't time in the original case to examine all of the areas and there weren't the resources of the tribes. Let's not forget this was 1974. The tribes were needed to be restrained from forcing them not to do that. And so the tribes were not able, and did not in fact, try to prove all of their usual and custom fishing areas in that original case. And it's made clear in the 1974 decree that the door is open. What troubles me is how do we figure out which have been determined and which have not? Let me just say very clearly, I don't think it can be the case that if you haven't won on a given area, you're allowed to keep trying forever for the same area. At some point, the court can say, no, that's specifically determined not to be part of your UNA. And so how do we tell which part has been adjudicated already and which part hasn't? I agree with your analysis, Your Honor. And my answer to that question is, if the particular area involved final decision number one, as ours did, the question is, what was established? Because Judge Bolt left open all areas not established. If there was a subsequent proceeding that was at issue, and here 97-1 is the proceeding that the other side says determined our UNA, the question would be, was there a full and fair opportunity to prove those areas on the merits? That's what we want here. That was a 25-1 proceeding. We didn't have an opportunity to prove those other areas in a full and fair way. That still presumes that it hadn't been determined already. Well, again, I go back to my initial premise, which is Judge Bolt said that I'm only establishing the areas. But what I want to refer to is what Judge Bolt said with suggesting that it only reached as far at least as Elliott Bay, according to Judge Rothstein's later interpretation of his language. It didn't reach other parts of Puget Sound or anything else. And how do we know that? I mean, there's no language in final decision one that says at least as far as. Indeed, the whole approach to the salt water suggests that this is secondary and implicitly limited. So what tells us that this is an unadjudicated claim? The answer is exactly what I think you just said, Your Honor. That is to say, it was a very general, broad description. It has the word secondarily in it. The only evidence in the record pertained to Elliott Bay. And Judge Bolt, in the language that I just read to you, said, I've only found in some areas, I found general. In general, I found things and things will have to be clarified later. But that is not to say that Judge Bolt intended, because what we're talking about here is what was his intent in using 25A6? What was his intent in entering that finding? If Judge Bolt were here today, I would advise the Court, Judge Bolt would say, of course, I intended to let tribes that had not proven up a certain area, even if I used ambiguous language. You keep going back to that question. We're past that question. It's established that if it hasn't been adjudicated, the door remains open. The question I'm pressing and for which I'm still waiting for an answer is what tells us that this has not already been adjudicated? So going back to the fact the door may be open doesn't answer my question. Let me try and answer it this way, Your Honor. I think the answer has to be that 97-1, that is, Muckleshoot 2, decided that issue. Muckleshoot 2 is the case that tells us what did Judge Bolt decide, right? That was the purpose of that decision. So Judge Bolt decided Elliott Bay had been adjudicated and was UNA for Muckleshoot and said nothing about, well, talked about the rest of Puget Sound in a 25A1 determination about intent. So let me ask you this. If there were a 25A6 hearing on the rest of Puget Sound, the areas that Muckleshoot Tribe is now claiming, and a court says, I don't think or my ruling is that this is not Muckleshoot's UNA, that would be an adjudication and that would determine that they were excluded. Is that correct? That would be our position, yes, Your Honor. So there would have to, in your view, there would have to be a 25A6 hearing to all new evidence or whatever you had to be heard from all sides and then there would be a ruling about what was in and what was out. That's correct. Okay. That is correct, Your Honor, yes. I guess I'd like to reserve the rest of my time if I could, Your Honor. All right. Thank you. I understand you want to share time, so if you can watch the clock. Very well. Thank you. Your Honor, my name is John Ogin. I represent the Suquamish Tribe. With me at council table is Lauren Rasmussen, who represents the Port Gamble and Janestown-Sklallam Tribes, with whom I'll be sharing time, as you've observed, and Office of Tribal Attorney, Mr. Rhett Belles, for the Suquamish Tribe as well. May it please the Court. Appreciate the panel's questions this morning, and rather than going through some of my introductory, I think we'll get right into those. So Judge Bolton, Final Decision 1, relied extensively on expert anthropological reports, and one of the key dichotomies that you will find both in those reports and in his findings is that he characterized the tribes as upriver peoples or inland fisheries-oriented many times as opposed to saltwater or marine. As you've seen, Judge Bolton, Finding of Fact No. 76, did characterize the Muckleshoot Tribe as an upriver, inland fisheries-oriented people, and did find for them a very vast, freshwater, riverine, usual and accustomed fishing area, and as you've noted, secondarily, something in Puget Sound. This Court has been asking excellent questions about what was the consequence of what opposing counsel calls Muckleshoot II, what we call the Judge Rothstein proceeding in 9701. In that case, Muckleshoot's usual and accustomed fishing area, the intent of Judge Bolton, Finding of Fact No. 76, and what he meant by secondarily, the waters of Puget Sound, was fully adjudicated, hotly contested, in fact. That was a 25A1 hearing, though, as I understand it. Do you disagree with that? No, I don't disagree. So the evidence all related to Judge Bolton's intent in drafting the final decision. So paragraph 25, Judge Bolton's continuing jurisdiction has a couple of branches, 25A6 and 25A1. This sub-proceeding was a 25A1 proceeding at the insistence of Muckleshoot, which is key here. It was at the insistence of the Muckleshoot Tribe itself. Isn't that because Muckleshoot said that the language of the final decision specifically determined that all of Puget Sound was UNA? That's how I read it. And that's certainly a reasonable reading of the final decision because, in fact, it does say that. Absolutely, Your Honor. Muckleshoot made a litigation strategic decision in that case to say, Judge Bolton said Puget Sound, it means all of Puget Sound. Judge Rothstein, and there can be no A6 jurisdiction and, as such, there can be no additional evidentiary hearing or evidence beyond the Bolt record, not probative of his intent, that can be offered. Isn't that what Muckleshoot 1 said? That is what Muckleshoot 1 said. In fact, Muckleshoot 1 was decided while Judge Rothstein was presiding over this case. So, again, it was Muckleshoot who said. So how is that really inconsistent? If they think they've got a winning hand because they take Puget Sound literally and think that Judge Bolt's decision should be interpreted that way, that would make sense for them to make the argument based on the words of the final decree. That's not the same thing as saying once Judge Rothstein has decided that, well, he said Puget Sound, but he meant Elliott Bay. That's not necessarily the same thing as saying Judge Bolt gave consideration to the potential claim beyond Elliott Bay to other areas of Puget Sound. What is there that tells us that those other areas of Puget Sound have already been adjudicated and the Muckleshoots lost their argument that that should be within their UNA? So the first step was that in Final Decision 1 before Judge Bolt, as I mentioned, the expert anthropological reports and other argument. In the case of Muckleshoot, the Judge Bolt relied upon, and then Judge Rothstein, and then this Court also looked at the evidence, as to what was submitted on behalf of Muckleshoot's fisheries. And as I started with, they emphasized the freshwater riverine systems. One of the pieces of evidence before Judge Bolt that Judge Rothstein noted was that the Muckleshoot tribes appeared to lack the technology for significant open saltwater fishing in the way of canoes. Let me ask you a question I also asked the other side. Is there language of exclusion in the Final Decision? In other words, Judge Bolt specifically determined these areas are UNAs. Is there language that says, but these areas are not UNAs? So he made some exclusion decisions. Is there anything in the Final Decision along those lines? Your Honor, there isn't, but for the they argue that he only said what was included and then left it open for further proceedings about other areas. Do you disagree with that? I do disagree with that, because to not read any meaning into the continuing jurisdiction's 25A6 proviso, which means this branch of jurisdiction is only open where there's no specific determination mean, if you can always have decision number one, and then an A1 proceeding with respect to a specific water, which is the case here, and not prevail and lose, and then also a 25A6 new trial with new evidence, if it takes three tries. Are you saying we should infer that if he included something, he excluded something else? Is that your position? I don't think you need to infer it. I think we need to look at the evidence before Judge Bolt, as Judge Rothstein did here. She looked at his language, obviously, Finding of Fact 76, and then carefully marched through the evidence before him that placed muckleshoot fisheries inland into rivers, and only along Elliott Bay, where they descended occasionally to the salt water, and may have done some fishing there. So are you saying that in in viewing, in Judge Rothstein, in a 25A1 hearing, which was determining the intent as to what was specifically determined, she was also determining an intent about some area that would be excluded, even though the final decision doesn't do that? I just want to make sure I'm understanding your argument. Is that your argument? Judge Rothstein issued an injunction. Is that your argument, that when she did a 25A1 hearing to determine Judge Bolt's intent, and determined that what he meant to specifically determine was just Elliott Bay, she was also determining that what he specifically, that he ruled that to exclude other parts of Puget Sound? Is that your argument? Yes, Your Honor. Okay, she doesn't expressly say that, of course. No. But is there any other case where, in a 25A1 hearing, we determined that Judge Bolt's intent was to exclude areas? Yes, there are quite a few. My client has been on the losing end of several of those 25A1 proceedings in the last decade or so. A sub-proceeding denoted as 0503. The Squamish Tribe also has a very broadly described UNA. The waters of Puget Sound, from the tip of Vashon Island north to the Fraser River, are very expansive. Subsequently, applying this court's decision in Muckleshoot 1, that said, if you have a specific determine, which we have, it's been declared we have, there have been 25A1 proceedings where the district court and this court have said, we lack the totality of that expanse of Puget Sound water. In sub-proceeding 0503, in sub-proceeding 0504. So a ruling saying that it's excluded, it's ruled, is authoritatively ruled to be excluded? Yes. Is that correct? So I didn't see any in the briefing, so maybe you can refer me to a site or a case. I would be interested in seeing that. So, a reference to citations where, after reviewing Judge Bolt's intent to be something less than, you know, a broad description of Puget Sound, that it is thereafter excluded? Right. So, like, I was asking opposing counsel about Muckleshoot 1, and I said, what happened after we said you can't have a 25A6 proceeding to clarify, you can't have new evidence to clarify Judge Bolt's intent, define what environments of Seattle mean under a 25A1 hearing? And my question was, well, then what happened? Was there a determination that this is in and this is out, or only this is in? Well, the courts, subsequent to the Muckleshoot 1 decision handed down during the proceeding, have carefully looked at the clarifying language as to when 25A6, which is the branch that new evidence can come through, may and may not be used. The district court has rejected 25A6 jurisdiction pleas in at least four cases since Muckleshoot 1 was decided. The consequence after Muckleshoot 1 is that if this court, if the district court applying Muckleshoot 1 finds you've been specifically determined, you then proceed only under A1. That's the clarifying decision of Muckleshoot 1. A careful investigation is made of the evidence, and the court divines the intent of Judge Bolt and what he said. Which brings us to here, which is his intent was that he specifically determined only Elliot Bay. And so that's all that was covered by the final decision. And that still leads me to my question, well, what about other areas that were not specifically determined? What tells us that those were ruled to be excluded? The district court has been, I'm not satisfying with my answers. The district court has carefully applied this court's clarification language and directed us to look only at the record of Judge Bolt if there is a specific determination. It is up to the district court to interpret its continuing jurisdiction. The district court, when an A6 application is made, will look and has been made or if it has not. That's the first step in applying this court's guidance in Muckleshoot 1. And I take it what you're telling us is there are instances where the district court has said that has been specifically determined, the determination was that it's outside the given applicants' UNA. That is, there is a negative determination that can be extracted from the final decision. Absolutely. You have to find a negative or a limiting effect. As this court said in the Muckleshoot 3 decision or what we call Puyallup, the very first paragraph penned by this panel affirming Judge Rothstein was the purpose is to look at the limit or the extent of Muckleshoot saltwater UNA declared by Judge Bolt. Your Honor, I am trying to reserve 10 or excuse me, time for my co-counsel. Yes, absolutely. Thank you. May it please the court, my name is Lauren Rasmussen for the Port Gamble-Sklom and Jamestown-Sklom Tribe. To answer your first question, a previous three-panel decision in Upper Skagit v. Suquamish, 590 F3D 1291, stated that Judge Bolt neglected to include certain areas in the tribe's UNA supports the conclusion that he did not intend for them to be included. And this analysis is we compare tribes' UNA and if one tribe has the phrase straight of Juan de Fuca, for example, with respect to the Lummi's dispute with the Sklom and the other tribe does not, this court has held that that evidence and intent not to include the straight of Juan de Fuca as an area generically to be all-encompassing. And so to answer your question. So we've interpreted Judge Bolt's ruling. So when he says this is specifically determined and we've interpreted or is it just courts. I think this was a Ninth Circuit case. We've interpreted Judge Bolt's ruling to implicitly exclude certain areas. Is that correct? Yes. So it's the inclusion of one evidence is an exclusion of the other. And we have several examples. So what confounds me about Michael's argument, it's as if the last 10 years never happened of jurisprudence in front of the district court. There's one other step that makes this complicated, which is the language used in Upper Skagit or Upper Skagit. Supports our conclusion that he did not intend them for them to be included. You understand that to mean not simply he wasn't adjudicating those areas so that they were the one of those things left off for the future, which he clearly intended some open door through that his paragraph F now called A6. You're saying that that should be taken to mean he did adjudicate and he intended them to be left out. And as a result, the A6 door is not available. So two things. Generically, the A6 specifically with respect to Muckleshoot, the A6 door is closed as per Muckleshoot one and the Puyallup case where Muckleshoot argued that A6 should not be available to reconsider or add amendments to their decree. So for Muckleshoot in particular, it's done. I try not to opine in general, but for the last decade, several tribes have been told they also have specifically determined UNA. So we have Lummi in Muckleshoot one, we have 053 where Suquamish's UNA was held to be specifically determined and specifically determined to exclude certain waters on one side of Whidbey Island. And so they're done with respect to paragraph 25A6. One problem I have with this inferring that Judge Boldt intended to exclude certain areas is that the language actually is extremely inclusive. And so it's hard to infer that when he said Puget Sound, he intended to exclude everything except Elliott Bay. There's no hints in the language of his actual decision. Well, so that goes back to the analysis that Judge Rothstein did where you looked at the record that was submitted for Muckleshoot and you found that there was absolutely no evidence of fishing beyond Elliott Bay. Your position is a later district court can not only interpret what Judge Boldt intended to exclude, is that correct? Only by reference to the specific evidence that Judge Boldt cited in support of finding effect 76. So if you look at finding all the findings issued by the district court, you'll see that every single one of them was annotated with the specific evidence relied on. And so that's what the court does in the A1 proceeding. They say, okay, court used Puget Sound very vague and ambiguously in this case. So I'm going to look at the record in front of it. Specifically, there's annotations in finding effect 76. There's been annotations in front for every single. So there was 500 proposed finding the facts and conclusions of law in this case at its onset. Every single one of them was annotated and reviewed extensively by counsel before they were submitted. You see that in the introduction for finding effect for the Boldt decision. But you asked a specific question that I believe has not been answered. Do we know what happens after paragraph 25A1? And we do, because we have the Lummi case 11-2. Once you're specifically determined, you can't submit additional evidence. We have the Suquamish case 053 and 054, where they used it both ways as a sword and a shield. So they used it to protect their UNA in one case, and they lost UNA that they were claiming in the 053 case. So, and then we have this Suquamish case, which was most recently affirmed in 2017 by the Ninth Circuit. And so we have all these- I found that it's necessary to carefully examine these cases because the courts are not always clear whether it's a 25A1 or 25A6 analysis. Absolutely. So in my brief, in the responding primary briefs, we've cited to the following cases. Subproceeding 053, which is reported at 20 F sub 377 at 799, later affirmed by the Ninth Circuit in a published decision. 054, 20 F sub 377 at 817. Is it listed page 25 of your brief? I believe so. I don't have the brief in front of me. And 11-2, which is reversed on other grounds, is now coming back up on appeal. 17-1 affirmed by this court on a jurisdictional basis, but the panel indicated that they would have affirmed on the merits, and that is not a published case. But later, one of the things that bothers me about the last 10 years is Michael Schutt didn't participate in most, if not all of these subproceedings where Judge Martinez was saying, this is how I'm interpreting Michael Schutt one. In 053, there was extensive discussion about paragraph 25A6. In 054, there was extensive discussion about paragraph 25A6. Those are the citations I gave you, and we're going to give you a copy of that blue book so you can find them more easily. And Michael Schutt said nothing all the time. Judge Martinez is saying, this is how I'm interpreting paragraph 25A6. First, you go through A1. I have to find that it wasn't specifically determined for you to get to door number two. In those cases, 053, 054, in addition, there's another one we forgot in our brief, 14-1, also affirmed by the Ninth Circuit. The court also said, you know, you're not going to get to present additional evidence of your UNA. The door is closed. So Puget Sound was not specifically determined. That was Judge Rothstein's decision. She said Puget Sound was not specifically determined to be Michael Schutt UNA. She said it was specifically determined. No, that's not how I would read that decision. So first, we have to remember that Michael Schutt... Was all of Puget Sound Michael Schutt's UNA? That's what the specifically determined language said. Michael Schutt argued that all of Puget Sound was their UNA, and what's important... Because that's what the final decision said, correct? And what's important about that argument is it means that Judge Rothstein actually considered that argument. They argued that all of Puget Sound was their UNA, that Judge Bolt considered it and adjudicated it, and only because they lost, they think they get another bite at the apple. If they had won, then they would be still saying that their UNA is specifically determined, and it includes everything. So the question of estoppel comes up. Why is that wrong? Because it's different sorts of evidentiary proceedings. Well, it's wrong because you can't argue that Judge Bolt considered it and adjudicated it in finding of fact number 76, and then come back 20 years later and say Judge Bolt never looked at the question. You could say that he considered the evidence in front of him, and Judge Rothstein described that as only being about Elliott Bay. There may have been no evidence whatsoever about the rest of Puget Sound, so Judge Bolt may never have considered about the rest. He's only looking at Elliott Bay. I mean, that's the argument. I don't think it's implausible. Yes, but let's remember, in cases like this, there are finite... There is finality to the findings in fact of conclusions of law that were made, and the ones with respect to Muckleshoot still stand here. Judge Rothstein... But the problem is that that finding says Puget Sound, and so Judge Rothstein goes into the exercise of what does that mean, and she decides it means Elliott Bay. Well, here's where I disagree. She says at SSER 89, which is published at 19 FSUP 1352 at 1307, the following facts are undisputed. At treaty times, Muckleshoot's predecessors were upriver Indians with fisheries primarily in the Duwamish and Puyallup drainage systems. There is evidence in the record that Muckleshoot descended to the rivers of Elliott Bay and used the beaches, and the issue is what, if any, saltwater UNA Judge Bolt intended to designate in finding effect 4076, and then later when this court reviewed this, so we have another Ninth Circuit decision where the court says specifically isolated or infrequent incursions beyond Elliott Bay, in this case that we're reviewing, do not meet the usually custom standard. I don't see why that's not a ruling that says what is excluded is what you didn't get, and what is included is what you did get, and then the court goes on to say... Along the same lines, reading from her decision, it says the documents before Judge Bolt indicate that the Muckleshoot's ancestors were almost entirely an uprover people who primarily relied on freshwater fishing for their livelihoods. Insofar as they conducted saltwater fishing, the reference documents contain no evidence indicating that the fishing occurred regularly anywhere beyond Elliott Bay. Exactly, and that is affirmed by the Ninth Circuit and cited. But I thought they were not allowed to bring in any new evidence that this was just evidence in the record plus other evidence that would show his intent as opposed to... Well, that's the problem. So we don't really have a ruling on a full complement of evidence, just on a limited body. Well, two things. Once your UNA is specifically determined, you don't get to present evidence to expand it. Yeah, but number two, they argued that it was an A-1 proceeding and not an A-6. All right, you're well over your time. Thank you. I appreciate that the court is focused on the framework. What is the framework for understanding how an A-6 proceeding proceeds on its own merits as opposed to in conjunction with an A-1 proceeding? This court has never addressed that issue. The lower court has addressed the issue inconsistently, I would submit, but never offered a clear answer. It certainly has not offered the answer that's been advanced by the opposing tribes. The opposing tribes have unfortunately told the court that the 97-1 was a 25-A-1 proceeding at our instance. In fact, we were the respondent in that matter. We were not the petitioner in that matter. We did not ask for any affirmative relief. They framed that as a 25-A-1 matter. And in fact, the evidence that we tried to submit was excluded at their instance. If one looks at Supplemental SER 100, that's Judge Rothstein's evidence. Most of the cases that have reached the circuit are 25-A-1 proceedings, going to Judge Ikuda's comment. And one does have to look carefully at whether the court is talking about an A-1 proceeding, that is an enforcement proceeding, and deciding this negative inference or the exclusion. What happens if an area is excluded in an enforcement situation is different than what we're trying to do here, which is to affirmatively prove a new area. That's what we're asking for, the opportunity to prove those new areas. That's not the same situation. And in fact— Well, but Muckleshoot 1 does speak to that, because it makes the point that you can't use what we now call the A-6 door if the area has been specifically determined. If the area has been—if the specific location being sought has been specifically determined, which again, we know is— Well, in that case, it says Judge Bolt, however, did, quote, specifically determine, close quote, the location of Lume's usual unaccustomed fishing grounds. I'll be using a description that has turned out to be ambiguous, which looks to me like exactly what we're facing here, which is that he determined the Muckleshoot's UNA, but used the description Puget Sound. And so there has been already, 20 years ago, litigation over what that meaning of Puget Sound was. But the point being made, I think, by Muckleshoot 1 is if it's been specifically determined, yes or no, it's not a one-way street, then A-6 is closed. Not yes or no, Your Honor. I would say only yes, because— See, that's not possible. It cannot be the case that the court has never adjudicated and said, no, that's not within your territory. We've said as much in the tribal name that I've mispronounced, Upper Skagit. Upper Skagit, yes, the Upper Skagit case. In the Upper Skagit case, this court—there's some very important language in the Upper Skagit case about what the meaning of the court's determination was there. And if you look at the Upper Skagit case at page 1025, the court said that the district court's conclusion under 25A1 does not have the effect of re-adjudicating the Suquamish's UNA or diminishing it as the tribe contends, because the Suquamish never had the right to fish in that area in the first place. In other words, all the court was doing in that 25A1 proceeding, just as it did in Muckleshoot 2, 97-1, was say what we already had under Judge Bolt's original decision. And what you, or in this case, the Suquamish did not have. And I think that's what I draw from that. That is, it's not just a one-way street. It's not only yes, it can be a no. If the district court has decided that a given area is not included within a UNA, then A6 is not available to try to revisit that particular area. I agree with that, Your Honor. I just don't agree that Judge Bolt did that. Judge Bolt specifically said he did not do that. That's the fundamental premise of final decision. He didn't say he did not do that with regard to the Muckleshoot's claim. He said he didn't do it for something. For all tribes. It's actually his language. It can't be, because that gets us right back to the one-way street. That is, if I didn't say yes, I don't think Judge Bolt meant, you can keep coming back forever, to keep coming back with more evidence until you finally make me or somebody else say yes. I guess what I would say, Your Honor, is Judge Bolt meant to give the tribes an additional chance, not multiple additional chances, but an additional chance to come back and establish additional areas. And the question we have in front of us here is whether Judge Bolt has already decided, or rest in peace, decided 50 years ago that this wasn't part of Muckleshoot UNA. That is, a request beyond Elliott Bay. I see my time's up. Thank you. Thank you. We thank both sides for their argument in this interesting case. In the case of Muckleshoot Indian Tribe versus the Tulalip Tribes and the Ho Indian Tribe is submitted, and we're adjourned for this session.
judges: Clifton, Ikuta, Rakoff